NORTH CAROLINA    FILED    IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FORSYTH COUNTY  2021 APR 22 P 4: 30    21 CVS 2157

FORSYTH CO., C.S.C.

ADRIAN SWITZER and )
MICHELLE SWITZER, )
                                    )
      Plaintiff,         )
                                    )
v.                                  )        COMPLAINT
                                    )
TYSON FARMS, INC.,         )
                                    )
      Defendant.    )

NOW COME Plaintiffs, complaining of the Defendant, who allege:

1. Plaintiffs Adrian Switzer and Michelle Switzer are residents of Forsyth County.

2. Defendant Tyson Farms, Inc. ("Tyson Farms") is a North Carolina business corporation with its principal place of business in Wilkes County, its registered office in Wake County and its corporate headquarters in Springdale, Arkansas.

3. Tyson Farms is an integral part of Tyson Foods, the largest poultry processing company in the United States. Tyson Farms operates a poultry processing facility in Wilkes County and has more than 2,000 employees,

4. Plaintiffs are married and are both Muslims, believers in the faith of Islam.

5. Plaintiff Adrian Switzer is a Black American male who was employed by Tyson Farms at its Wilkes facility known as "Plant1" and/or the "Fresh Plant" as a Debone Cutter or Rehanger from the Spring of 2015 until he left Tyson Farms employment on or about June 19, 2019.

1

Case 1:21-cv-00585 Document 3 Filed 07/16/21 Page 1 of 7

6. Plaintiff Michelle is a Black American female who was employed by Tyson Farms at the Wilkes facility as a Thigh Trimmer or Backup Laborer from the Spring of 2015 until terminated by Tyson Farms on or about April 18, 2019.

7. Plaintiffs were both employed in the Thigh Fillet (also known as Thigh Debone) Department and their jobs required working with and cutting or handling raw chicken parts.

8. Tyson Farms maintained an atmosphere at its Wilkes facility that required of its employees there a strict company loyalty, confidentiality to management and non-discussion of employment matters with others. This atmosphere generates a strong fear among of employees regarding their job security and of revealing Tyson Farms employee matters to outsiders.

9. In their Tyson Farms employment, both Plaintiffs were referred to as "team members" subject to daily instruction and monitoring by Team Leader Tammy Bobbitt ("Bobbitt"), a white female, who assisted the Department Supervisor with various job duties, including job assignments, monitoring and promoting productivity of individual employees and providing them with protective equipment, including smocks (aprons), eye goggles and gloves.

10. Bobbitt demonstrated, through her conduct as exhibited to the Plaintiffs and others that she has an innate predisposition to regard Black people that she has any reason to dislike, and Muslims in general, with disdain, thinking of Black people in her thoughts as "Niggers", a harsh, derogatory, offensive, contemptuous and humiliating ethnic slur noted by Websters Dictionary as "almost certainly the most offensive and inflammatory racial slur in English, a term expressive of hatred and bigotry".

11. Upon information and believe, Team Leader Bobbitt voiced her view of Black people to at least one supervisor, that as "These 'Niggers' are just trashy, no good people"

2

12. Bobbitt's attitude toward and treatment of the Plaintiffs worsened demonstrably after an occasion in which Bobbitt overheard a discussion between Plaintiffs and a co-worker in which the subject of the Plaintiffs not eating pork was mentioned and Bobbitt interjected herself in the conversation, her facial expression changed disapprovingly and she asked "Y'all Muslim?" and repeatedly questioned the Plaintiffs after they affirmed that they were – as if it were the worse thing in the world - as to why they would want to be or become a Muslim.

13. During their respective employments, each Plaintiff was subjected to a pervasive racially and religiously hostile environment by Tyson Farms created by:

(a) the actions of Bobbitt calling them "Niggers" – an inherently offensive and race-based term - in a hostile and aggressive manner; and

(b) the condonation of her actions by Tyson Farms' supervisors and management, including those to whom they complained, as alleged in the next paragraph.

14. As to Plaintiff Adrian Switzer, such occasions included, but were not limited to:

(a) Called him "Nigger" on numerous occasions;

(b) Called him "Nigger" in front of his wife, Plaintiff Michelle Switzer;

(c) Hounded and berated him repeatedly, including watching him during his break periods, on an almost daily basis;

(d) Told him that "I'm sick of you, Nigger", while shaking her head in a disapproving manner; told him to "Hurry up, Nigger"; and asked him "What are you looking at, Nigger";

(e) Caused co-workers to laugh at him.

15. As to Plaintiff Michelle Switzer, such occasions included, but were not limited to:

3

(a) Calling her "Nigger" and calling her husband, Plaintiff Adrian Switzer "Nigger" in her presence; and

(b) Telling her that "I'm sick of you Niggers", while swinging her arms down with a clinched fist, when Plaintiff went to get a protective smock for herself after Bobbitt had thrown a smock at her rather than handing it to her as she did to other employees.

16. Both Plaintiffs voiced and/or submitted complaints about their unlawful treatment to Tyson Farms, including, but not limited to:

(a) their supervisor(s), including Melvin Roberts ("Roberts") who told Plaintiff Adrian Switzer that he did not want to hear his complaints about Team Leader Bobbitt's calling Plaintiff "Nigger" and told him that Bobbitt did not call him that;

(b) to Tyson Farms Human Resources Department;

(c) to the Insurance Department;

(d) to the Wilkes facility management, including Holloway who acted as if it were a joke, asking Plaintiff Adrian Switzer "Are you assuming that [Bobbitt] called you that?";

(e) to Tyson Farms' 800 Employee Help Line (twice by Plaintiff Adrian Switzer and once by Plaintiff Michelle Switzer), which calls only resulted in the matter being referred back to the Wilkes management;

17. Tyson Farms did virtually nothing, if anything, to stop or correct Team Leader Bobbitt from harassing the Plaintiff Adrian Switzer and calling the Plaintiffs by the racial slur "Nigger".

18. On or about April 20, 2019, Tyson Farms terminated Michelle Switzer for reasons related to her race, religion and retaliation for her prior complaints of racial and religious discrimination, all of which were made in good faith and based on fact.

4

Case 1:21-cv-00585  Document 3  Filed 07/16/21  Page 4 of 7

19. As a result of his unlawful treatment by Team Leader Bobbitt and Tyson Farms' absolute failure to eliminate or control it, Plaintiff Adrian Switzer - despite his desire to keep his Tyson Farms job and work there until retirement - felt compelled to quit and told his supervisor Roberts that he was going to leave Tyson Farms because of Team Leader Bobbitt's pervasive racial hostility toward him and the failure of Tyson Farms to correct her conduct

20. On or about July 1, 2019, Plaintiff Adrian Switzer timely filed a Charge of Discrimination (Race and Religion) against the Defendant with the Equal Employment Opportunity Commission ("EEOC"), Charge Number 435-2019-00906.

21. On or about July 1, 2019, Plaintiff Michelle Switzer timely filed a Charge of Discrimination (Race and Retaliation) against the Defendant with the Equal Employment Opportunity Commission ("EEOC"), Charge Number 435-2019-00907.

22. The Defendant's management acted out of sense of personal ill will toward the Plaintiffs that activated or incited the Defendant to commit the wrongful acts alleged above, as demonstrated by the actions of Bobbitt and Roberts which were motivated by a racially discriminatory attitude toward the Plaintiffs and a negative and derogatory attitude toward the Plaintiffs that arose as a result of the Plaintiffs having made complaints of hostile and discriminatory treatment on many prior occasions.

23. The Defendant engaged in discriminatory practices and retaliation with malice and/or with reckless indifference to and with knowledge of the federally protected rights of the Plaintiffs which its managers named above knew were protected rights because of her prior complaints about Team Leader Bobbitt and their general knowledge of the rights protected by Title VII acquired in the course of their training by the Defendant and other sources. At the least, the Defendant's management perceived that there was a risk that its treatment of the Plaintiffs and termination of the Plaintiff Michelle Switzer might violate federal law.

5

24. The discriminatory and retaliatory practice of the Defendant's management employees alleged above are justly imputed to the Tyson Farms because they are the individuals empowered by it to carry out its employment relationship toward the Plaintiffs, because it empowered Team Leader Bobbitt to be able to treat the Plaintiffs as she did, and because of its intentional disregard for the complaints of racially motivated harassment by both Plaintiffs which Tyson Farms knew violated the requirements of Title VII.

25. The EEOC found reasonable cause to believe that violations of Title VII were committed by Tyson Farms against both Plaintiffs, but failed to obtain relief for the Plaintiffs from Tyson Farms through conciliation efforts.

26. On January 7, 2021, the EEOC issued a Notice of Right to Sue (Conciliation Failure) to the Plaintiff Adrian Switzer in Case No. 435-2019-00906, which he received no earlier than January 22, 2021. A copy thereof is attached as Exhibit A to this Complaint.

27. On January 7, 2021, the EEOC issued a Notice of Right to Sue (Conciliation Failure) to the Plaintiff Michelle Switzer in Case No. 435-2019-00906, which she received no earlier than January 22, 2021. A copy thereof is attached as Exhibit B to this Complaint.

28. As a proximate result to the Defendant's unlawful violations of Title VII, Plaintiff Adrian Switzer suffered episodes of his chest tightening, abnormal breathing, nausea, vomiting three times during one work shift; severe humiliation; a pervasive sense of powerlessness; and other psychological and emotional damages resulting from workplace degradation, retaliation and discrimination; and substantial pain and suffering.

29. As a proximate result to the Defendant's unlawful violations of Title VII, Plaintiff Michelle Switzer suffered termination of her employment; loss of pay; severe humiliation; a pervasive sense of powerlessness; and other psychological and

emotional damages resulting from workplace degradation, retaliation and discrimination; and substantial pain and suffering.

30. Defendant Tyson Farms should be required to pay each Plaintiff punitive damages in a sum to be determined by the Jury, for reason of the reprehensible conduct of the Defendant alleged above, its malice exhibit toward the Plaintiffs and its reckless disregard and indifference to the rights of the Plaintiffs and the harm done to the financially vulnerable Plaintiffs, as alleged above.

**WHEREFORE**, each Plaintiff demands separate judgment against the Defendant for the full relief provided by law for its violations of Title VII, including:

(1) Trial by Jury on all issues properly subject to jury trial under Title VII law;

(2) Compensatory and punitive damages separately for each Plaintiff to the full extent allowed by the facts and the law, which is a total amount incurred or to be incurred by them in excess of $25,000.00;

(3) the costs of this action, including reasonable attorney fees; and

(4) such other legal and equitable relief as the law may allow.

*/s/ Herman L. Stephens*
HERMAN L. STEPHENS
N.C. State Bar # 4147
Attorney for Plaintiffs

The Law Office of Herman L. Stephens
500 W. 4th Street, Suite 100
Winston-Salem, NC 27101
Telephone: 336-722-7126
Facsimile: 336-631-8702
Email: lawstephens@bellsouth.net

7

Case 1:21-cv-00585  Document 3  Filed 07/16/21  Page 7 of 7